UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

|  |  |  |
|---|---|---|
| ANTHONY D. PACE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:11-CV-489 CAS |
| | ) | |
| WELLS FARGO BANK, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

<u>**MEMORANDUM AND ORDER**</u>

This matter is before the Court on defendant Wells Fargo Bank, N.A.'s motion for summary

judgment.  Plaintiffs oppose the motion and it is fully briefed.  For the following reasons, the Court

will grant the motion.

**I.  Background**

In 2003, plaintiffs Anthony D. Pace and Terri L. Pace, husband and wife ("plaintiffs"),

obtained a home loan from defendant's predecessor.  Plaintiffs signed a promissory note and also

signed a deed of trust encumbering real property located at 212 Vogel Estates Court in Arnold,

Missouri.  In 2009, plaintiffs experienced financial difficulties and sought loan modification.  After

a trial modification period, defendant eventually denied plaintiffs' requests for loan modification

and ultimately foreclosed on the real property in September 2010.  In January 2011, plaintiffs filed

a Petition ("complaint") in the Circuit Court of Jefferson County, Missouri, asserting state law

claims of wrongful foreclosure, fraud and negligence.  Defendant removed the case to this Court

based on diversity of citizenship under 28 U.S.C. §§ 1332(a) and 1441(a).

## II. Facts

On April 24, 2003, plaintiffs obtained a One Hundred Thirty-Nine Thousand Four Hundred Dollar ($139,400) loan from Wells Fargo Home Mortgage, Inc. and signed a promissory note (the "Note") payable to Wells Fargo Home Mortgage, Inc..  In connection with the loan, plaintiffs signed a deed of trust (the "Deed of Trust") encumbering property located at 212 Vogel Estates Court, Arnold, Missouri 63010 (the "Property") securing repayment of the Note.  The Deed of Trust provides:

> Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successor in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third parties, entities or Successors in Interest of Borrower in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

Def.'s Ex. B (Deed of Trust), ¶ 12.

> The Deed of Trust further provides:

> Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of debt including promises to extend or renew such debt are not enforceable.  To protect you (Borrower(s)) and us (Creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

Def.'s Ex. B, ¶ 27.

Wells Fargo Home Mortgage, Inc. is now known as Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A.  Defendant Wells Fargo Bank, N.A. ("defendant") is the successor by merger to Wells Fargo Home Mortgage, Inc.  The Note signed by plaintiffs was endorsed in blank. Defendant has maintained physical possession of the original Note since on or about May 14, 2003.

Plaintiffs testified they have no facts to support their allegations in the complaint that defendant is not the holder of the Note.

In February 2009, Anthony Pace lost his job. Plaintiffs continued to make their regular monthly payments for a few months thereafter. Plaintiffs contacted defendant and sought modification of the terms of the Note and Deed of Trust, specifically with regard to the required monthly payment. On July 7, 2009, defendant sent plaintiffs a Special Forbearance Agreement, in which defendant agreed to accept a single payment on October 7, 2009 in the amount of $3,193.89, representing the payments that were due for July 2009, August 2009 and September 2009. On July 9, 2009, plaintiffs signed the Special Forbearance Agreement and returned the document to defendant.

Pursuant to the terms of the Special Forbearance Agreement, plaintiffs were obligated to make a single one-time payment on October 7, 2009 in the amount of $3,193.89. The terms of the Special Forbearance Agreement also provided:

> Payments must be made strictly in accordance with the enclosed payment schedule and forbearance agreement conditions. This plan is an agreement to temporarily accept reduced payments or maintain regular monthly payments during the plan specified below. *Upon completion of the plan, the loan must be brought current or an arrangement to satisfy the arrearage must be executed.*

Def.'s Ex. E (Special Forbearance Agreement), ¶ 2 (emphasis added).

Plaintiffs did not remit the October 7, 2009 payment that was due under the Special Forbearance Agreement. Plaintiffs did not bring the loan current at the end of the term of the Special Forbearance Agreement. Plaintiffs did not sign an arrangement to satisfy the arrearage as required under the Special Forbearance Agreement.

In September 2009, plaintiffs received a letter from defendant advising plaintiffs that they *may* be eligible for a trial modification plan under the government's Home Affordable Modification

Program ("HAMP").  The letter stated that plaintiffs' estimated monthly payment under the trial modification plan would be $546, and that plaintiffs would be required to make three trial payments and supply additional financial documentation.  In response to this letter, plaintiffs contacted defendant to discuss their options for HAMP loan modification.  Plaintiffs made three trial payments of $546 on September 29, 2009, October 29, 2009 and November 29, 2009.

On October 25, 2009, defendant sent Plaintiffs a Notice of Default.  The October 2009 Notice of Default advised plaintiffs the loan was in default, the total delinquency as of October 25, 2009 was $2,687.47, and that the delinquency must be paid in certified funds to avoid acceleration.  Defendant sent plaintiffs a second Notice of Default on January 3, 2010 and advised that the total delinquency as of January 3, 2010 was $4,258.52, and that the delinquency must be paid in certified funds to avoid acceleration.

Between September 29, 2009 and March 19, 2010, plaintiffs remitted payments of $546.00 each month.  Plaintiffs did not receive and sign any written loan modification agreement modifying the terms of the Note and Deed of Trust between September 2009 and the September 27, 2010 foreclosure sale.  Defendant stopped accepting plaintiffs' tendered payments of $546 after March 2010.

Plaintiffs received a third Notice of Default dated March 28, 2010.  The March 28, 2010 Notice of Default advised plaintiffs the total delinquency as of March 28, 2010 was $6,275.98 and further advised that this amount must be paid in certified funds on or before April 27, 2010, or defendant would proceed with acceleration.  Plaintiffs did not pay the $6,275.98 in certified funds to avoid acceleration.

On June 23, 2010, defendant sent plaintiffs a letter advising that their request for a loan modification was denied.  On July 30, 2010, defendant advised plaintiffs that despite having

4

accepted in the past payments of amounts less than the amount required to reinstate the loan, it would only accept the total amount due to satisfy all outstanding payments due from that day forward.

On August 4, 2010, Kozeny & McCubbin, L.C. sent plaintiffs a letter advising them that defendant had referred plaintiffs' loan to Kozeny & McCubbin, L.C. for foreclosure and that the debt under the Note and Deed of Trust had been accelerated and declared immediately due and payable. Plaintiffs also received a letter dated August 3, 2010 from Kozeny & McCubbin, L.C. offering reinstatement of the loan and confirming that foreclosure would continue until defendant could determine if plaintiffs were eligible for one of the alternatives outlined in the letter and an agreement to utilize that alternative was signed and implemented. Plaintiffs did not follow up with Kozeny & McCubbin, L.C. because plaintiff Anthony Pace testified he "didn't feel [he] needed to" and did not even read the whole letter.

Defendant appointed Kozeny & McCubbin, L.C. as Successor Trustee on August 5, 2010. Plaintiffs again sought review for a loan modification on August 23, 2010. On September 1, 2010, Plaintiffs were advised that they were not eligible for a HAMP loan modification. On September 2, 2010, Kozeny & McCubbin, L.C. notified plaintiffs via certified mail that the foreclosure sale was scheduled for September 27, 2010. Plaintiffs received the Notice of Foreclosure. Anthony Pace testified he did not follow up with anyone at Kozeny & McCubbin, L.C. Anthony Pace testified that he and his wife understood the foreclosure sale would proceed on September 27, 2010.

Plaintiffs' request for a non-HAMP loan modification was denied on September 24, 2010. Defendant attempted to contact plaintiffs on September 27, 2010 to advise them that their request

5

for a modification was denied, but plaintiff Anthony Pace terminated the call before the denial could be communicated to him.[1]

Between March 20, 2010 and the date of foreclosure, September 27, 2010, plaintiffs did not make any payments on the Note.  Kozeny & McCubbin, L.C. conducted a foreclosure sale on September 27, 2010, and the Property was sold to Federal National Mortgage Association.  On the date of the foreclosure sale, the Note was due for the October 1, 2009 payment.

In their complaint, plaintiffs allege:

> During June and July of 2010, Plaintiffs continue to communicate with Defendant regarding their application and were told numerous different and inconsistent things from each employee or agent that they spoke with, including, but not limited to that they were now nine (9) months behind, that they did previously qualify for the HAMP program and the employee could not see any reasons for their denial, that they would qualify for the in house program, that they would not qualify for the in house program, that their loan was current, that no foreclosure was pending, that a foreclosure was pending, and other inconsistent and unreliable information.

Complaint at 7, ¶ 50.

Plaintiff Anthony Pace avers in his Affidavit that unnamed employees or agents of defendant told plaintiffs that (1) plaintiffs could not make their full loan payments during consideration for a loan modification, (2) if plaintiffs brought their loan current, they would no longer be considered for or would be ineligible for a loan modification, and (3) "Plaintiffs only failed to bring their loan current and/or reinstate the loan prior to the foreclosure sale because Defendant's employees and/or

---

[1] Plaintiffs denied defendant's statement of material fact No. 42, which states, "Wells Fargo attempted to contact Plaintiffs on September 27, 2010 to advise that Plaintiffs' request for a modification was denied; but Plaintiffs terminated the call.  Exhibit G ¶ 30 (Affidavit M. Overton); Exhibit O (LMT Notes)."  Plaintiffs did not offer any contrary evidence, however, or refer to any portion of the record in support of their denial, nor did they address this issue in their own statement of material facts.  As such, under Local Rule 4.01(E), this statement of fact is deemed admitted.

agents instructed them that doing so would disqualify them for a loan modification." Pace Aff., ¶ 59.

## III. Legal Standard

The Eighth Circuit recently clarified the appropriate standard for consideration of motions

for summary judgment, explaining as follows:

> Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. The movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

Torgerson v. City of Rochester, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) (internal citations

and quotation marks omitted). The Court also explained what the nonmoving party must do to meet

its obligation to show that disputed facts are material:

> In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying "facts that might affect the outcome of the suit." Anderson [v. Liberty Lobby, Inc.], 477 U.S. [242] at 248 [(1986)]. The nonmoving party must then categorize the factual disputes in relation to the legal elements of her claim. Id.; Rodgers v. City of Des Moines, 435 F.3d 904, 908 (8th Cir. 2006).

Quinn v. St. Louis County, 653 F.3d 745, 751-52 (8th Cir. 2011). A party resisting a properly

supported motion for summary judgment has the burden to designate the specific facts that create

a triable question of fact, Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004),

and "must substantiate allegations with sufficient probative evidence that would permit a finding

in the plaintiff's favor." Davidson & Assocs. v. Jung, 422 F.3d 630, 638 (8th Cir. 2005). Self-serving affidavits without support are not sufficient to defeat summary judgment. Conolly v. Clark, 457 F.3d 872, 876 (8th Cir. 2006).

## IV. Discussion

### A. Wrongful Foreclosure

Plaintiffs allege in their complaint that the foreclosure was wrongful because defendant was not the holder of the Note or the Deed of Trust, and therefore its appointment of a Successor Trustee and the subsequent foreclosure of the Property were invalid. Plaintiffs also alleged that payments were advanced on the Note by third parties for their benefit, so that no default had occurred.

Defendant argues that plaintiffs cannot prevail on a cause of action in tort or in equity based on wrongful foreclosure because the undisputed facts show that defendant was in possession of the original Note endorsed in blank at the initiation of foreclosure, and plaintiffs were in default as of October 2009. Plaintiffs oppose defendant's motion, contending that issues of material fact exist as to whether they were in default at the time of the foreclosure sale, and therefore summary judgment is inappropriate on their claims for tort damages for wrongful foreclosure. Plaintiffs also contend that issues of material fact exist as to whether the foreclosure sale was a result of fraud or unfair dealing, and therefore summary judgment is inappropriate on their claims for equitable wrongful foreclosure.

Under Missouri law, the term "wrongful foreclosure" has been used both in suits in equity as a basis for setting aside a foreclosure sale and in suits at law as a basis for recovering tort damages. Fields v. Millsap & Singer, P.C., 295 S.W.3d 567, 571 (Mo. Ct. App. 2009). "What constitutes a 'wrongful foreclosure' sufficient to set aside a sale and what constitutes a 'wrongful foreclosure' sufficient to recover damages in tort are not the same." Id. at 571-72 (quoted case

omitted).  Plaintiffs assert both types of wrongful foreclosure in their complaint.  Accordingly, the Court will examine plaintiffs' wrongful foreclosure claims under the two distinct causes of action available under Missouri law.

### 1.  Tort Action for Wrongful Foreclosure

"A tort action for damages for wrongful foreclosure lies against a mortgagee only when the mortgagee had no right to foreclose at the time foreclosure proceedings were commenced."  Dobson v. Mortgage Elec. Registration Sys. Inc./GMAC Mortgage Corp., 259 S.W.3d 19, 22 (Mo. Ct. App. 2008) (citing cases).  "If there is a right to foreclose, there can be no tort cause of action for wrongful foreclosure."  Id.  "A plaintiff seeking damages in a wrongful foreclosure action must plead and prove that when the foreclosure proceeding was begun, there was no default on its part that would give rise to a right to foreclose."  Id.  "A plaintiff must 'plead and prove such compliance with the terms of the deed of trust as would avoid lawful foreclosure.'"  Id. (quoting Spires v. Lawless, 493 S.W.2d 65, 71 (Mo. Ct. App. 1973)).

The undisputed facts show that plaintiffs were in default at the time the foreclosure was initiated.  In July 2009, a few months after plaintiff Anthony Pace lost his job, plaintiffs contacted defendant seeking a loan modification to lower their monthly payments.  In response, defendant sent plaintiffs a Special Forbearance Agreement in which defendant agreed to accept a single payment of $3,193.89 on October 7, 2009 instead of the three payments that would have been due for the months of August, September and October 2009.  The one-time payment specified in the Special Forbearance Agreement was equal to the three monthly payments that would have been due under the terms of plaintiffs' promissory note.  Plaintiffs accepted the Special Forbearance Agreement on July 9, 2009, but failed to remit the payment due on October 7, 2009 and failed to bring their loan current at the end of the term of the Special Forbearance Agreement.

9

Plaintiffs admit that other than the Special Forbearance Agreement, they did not sign a loan modification agreement at any time between July 2009 and the date of the foreclosure sale in September 2010. Defendant notified plaintiffs twice in writing during that time period that they did not qualify for a loan modification. Thus, the undisputed facts establish that at the time of the foreclosure sale plaintiffs' loan was in default and due for the October 9, 2009 payment.

Plaintiffs contend they were not in default because they made "trial payments" of $546.00 per month from September 2009 through March 2010, and were never told that "failure to make their full payment may cause them to be in default, or cause them to go into foreclosure." Pls.' Mem. Opp. at 8. Plaintiffs also contend they were told not to make their full monthly payments and that the "trial payments" were the new payments under the Note. To support their position, plaintiffs rely solely on Mr. Pace's affidavit. Mr. Pace's statements about purported conversations with unidentified representatives of defendant are self-serving declarations unsupported by any evidence and are insufficient to create a genuine issue of fact. "A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." Davidson, 422 F.3d at 638 . See also Conolly, 457 F.3d at 876. ("[A] properly supported motion for summary judgment is not defeated by self-serving affidavits.").

For example, in Conolly, the Eighth Circuit affirmed summary judgment in favor of the defendant in a contract dispute even though the plaintiff submitted his own affidavit in an attempt to create a genuine issue of material fact in dispute. 457 F.3d at 876. The plaintiff asserted a claim for breach of an oral contract concerning the sale of a business. The defendant moved for summary judgment asserting the uncontested facts showed the parties had not entered into a contract. Id. The district court granted summary judgment, finding that the undisputed documentary evidence – a

10

letter and a series of e-mails – was insufficient to establish a contract.  Id. at 875.  On appeal, the plaintiff asserted the district court erred by focusing only on the documentary evidence and ignoring the plaintiff's affidavit, in which he described the terms of the alleged oral contract.  The Eighth Circuit held that the plaintiff's unsupported, self-serving statements were insufficient to create a genuine issue of fact and therefore the district court did not err in disregarding the affidavit.  Id. at 876.

Here, plaintiffs have not produced any probative evidence to demonstrate that an authorized representative of defendant made any of the alleged statements recited in Mr. Pace's affidavit.  In fact, the unsubstantiated alleged statements of unidentified persons referenced in Mr. Pace's self-serving affidavit are directly contrary to the written notifications from defendant concerning default that plaintiffs admit receiving.  Further, plaintiffs' complaint alleges that plaintiffs "were told numerous different and inconsistent things from each employee or agent that they spoke with" including that "they would qualify for the in house program, that they would not qualify for the in house program, that their loan was current, that no foreclosure was pending, that a foreclosure was pending, and other inconsistent and unreliable information."  Complaint at 7, ¶ 50.[2]  Mr. Pace's affidavit does not address the "inconsistent and unreliable" things plaintiffs were allegedly told by defendant.  The bare assertions in Mr. Pace's affidavit are insufficient to create a genuine issue of material fact regarding whether plaintiffs were in default at the time foreclosure was initiated.

_____

[2]Statements made in pleadings constitute judicial admissions binding on the parties, unless they are withdrawn or amended.  Missouri Hous. Dev. Comm'n v. Brice, 919 F.2d 1306, 1314 (8th Cir. 1990).  Plaintiffs have not withdrawn or amended these statements in their pleadings.  "[E]ven if the post-pleading evidence conflicts with the evidence in the pleadings, admissions in the pleadings are binding on the parties and may support summary judgment against the party making such admissions."  Id. at 1315.

Even assuming that Mr. Pace did have conversations with defendant's representatives regarding plaintiffs' contractual obligations to remit payments, the undisputed facts establish that apart from the Special Forbearance Agreement, plaintiffs did not enter into any written loan modification agreement signed by both parties. Plaintiffs admit there was never an agreement in writing between defendant and plaintiffs showing defendant's agreement to accept the $546 payment as the full monthly mortgage payment. These facts are significant because the Deed of Trust expressly provides that "oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable," and that any modification of the loan must be in writing. Plaintiffs also admit they did not bring the loan current after the term of the Special Forbearance Agreement and did not sign an arrangement to otherwise satisfy the arrearage as required by the Special Forbearance Agreement.

Plaintiffs attempt to create an issue of fact by saying if they had been notified of the deficiency they could have brought the loan current. Plaintiffs admit, however, that they received three written Notices of Default, each of which stated clearly that their loan was in default, stated the amount of the deficiency, and advised plaintiffs that the delinquency must be paid in certified funds in order to avoid acceleration of the debt. Plaintiffs also admit they received a letter from Kozeny & McCubbin in August 2010 offering reinstatement of the loan to avoid foreclosure, but failed to respond to the letter.

Thus, the uncontested facts clearly establish that plaintiffs received several notices they were in default and were given multiple opportunities to avoid acceleration or to reinstate the loan by paying the outstanding balance owed, which they admittedly failed to do. Plaintiffs also admit they did not make any payments from March 20, 2010 to the date of foreclosure.

Based on the foregoing, plaintiffs' tort claim for wrongful foreclosure fails.  The undisputed facts establish that plaintiffs were in default at the time of foreclosure.  As a result, defendant's motion for summary judgment should be granted on this claim.

### 2.   Action in Equity for Wrongful Foreclosure

If a mortgagee had the right to foreclose, but the sale was otherwise void or voidable, then the remedy is a suit in equity to set the sale aside.  Nevertheless, "A mortgagee's act of commencing a foreclosure cannot be wrongful when there is a clear right to foreclose."  Peterson v. Kansas City Life Ins. Co., 98 S.W.2d 770, 773 (Mo. 1936) (citation omitted).  A court may grant equitable relief and set aside a foreclosure sale as invalid "when a circumstance denies the mortgagee the right to cause the power of sale to be exercised," such as where the foreclosing party does not hold title to the promissory note, the mortgagor has not defaulted at the time of first publication of the notice of sale, the note has been paid, or the deed of trust authorizes sale upon the request of its holder and no such request has been given.  Graham v. Oliver, 659 S.W.2d 601, 603-04 (Mo. Ct. App. 1983) (citing cases).  "'A mortgagor . . . can invoke the aid of equity to set aside a foreclosure sale only if fraud, unfair dealing or mistake was involved in the trustee's sale.'"  Ice v. IB Property Holdings, LLC, 2010 WL 1936175, at *3 (W.D. Mo. May 13, 2010) (quoting American First Fed., Inc. v. Battlefield Ctr, L.P., 282 S.W.3d 1, 8-9 (Mo. Ct. App. 2009)).

It is undisputed that defendant was the party entitled to enforce the Note and the proper party to appoint Kozeny and McCubbin, L.C. as Successor Trustee.  The Note is endorsed in blank and therefore defendant's physical possession of the Note from and after May 2003 entitled it to enforce

the Note through the foreclosure sale on September 27, 2010.[3]  Plaintiffs have not presented any evidence or argument to the contrary.

Plaintiffs contend that genuine issues of fact exist as to whether the foreclosure sale was the result of fraud or unfair dealing.  In support, plaintiffs rely on self-serving statements in Mr. Pace's affidavit to attempt to establish that defendant made misrepresentations and false statements about the status of plaintiffs' request for a loan modification and the status of their loan generally.  As stated above, these statements lack any probative evidence to support them and are called into question by the complaint's allegations that plaintiffs were provided inconsistent, conflicting and unreliable information concerning the loan modification.  As discussed above, plaintiffs admit they failed to comply with the express terms of the Special Forbearance Agreement and that they did not sign any other forbearance or loan modification agreement.  Plaintiffs also admit receiving several Notices of Default expressly informing them that they were in default.  Plaintiffs were given multiple opportunities to reinstate the loan prior to the foreclosure sale but did not do so.

As evidence of fraud or unfair dealing, plaintiffs assert that on September 24, 2010, the Friday before the foreclosure sale on Monday September 27, 2010, defendant "intentionally and knowingly concealed from Plaintiffs the fact that they had been denied for a modification [which] led Plaintiffs to hold out hope that they could be approved for a modification, rather than allowing them to reinstate the loan."  Plaintiffs point to  Wells Fargo process note entries dated September 24, 2010 that state, "File is pending decline review.  File is currently in peer review.  Do not communicate pending decline to mortgagor;" and "Loan is being recommended for decline."  Pls.' Ex. 2.

---

[3]A blank endorsement is an endorsement that does not identify a person to whom the endorsement makes the instrument payable.  Mo. Rev. Stat. § 400.3-205(b) (2000).

These note entries state that a decision on plaintiffs' modification was "pending" and "being recommended," meaning that it was awaiting decision and was not yet final.  Mr. Pace avers that he spoke to defendant's employees on September 24, 2010 and was told that a decision on the loan modification was pending.  Pace Aff. at 4, ¶ 35.  Thus, the instruction not to communicate a non-final decision to plaintiffs regarding the modification on September 24, 2010 does not raise an issue of potential fraud or unfair dealing, particularly where Mr. Pace was informed that the decision was pending.  Process note entries from the day of the foreclosure sale, September 27, 2010, state that a "second level" review was performed which agreed with the decline recommendation, and defendant then attempted to contact plaintiffs with the decision but was unsuccessful because "[Mr. Pace] disconnected the call from me once I read the disclaimer to him.  Unable to advise mortgagor of decline.  Pls advise if he calls in . . . I spoke to mortgagors wife's [sic] on Friday and informed her of everything going on with loan."  Def.'s Ex. O.

Plaintiffs had previously received notices of default and notice of the foreclosure sale, and had been given multiple opportunities to reinstate their loan prior to the foreclosure sale.  Plaintiffs do not offer any evidence to show that defendant's failure to communicate the pending decline to them on September 24, 2012 caused their inability to reinstate their loan and avoid foreclosure.  Cf. Cox v. Mortgage Elec. Registration Sys., Inc., 685 F.3d 663, 673-74 (8th Cir. 2012) (where homeowners' factual allegations did not support a reasonable inference that relying on the lender's allegedly false statements caused a loan modification denial and subsequent foreclosure, they failed to state a claim for fraudulent misrepresentation).

Thus, the undisputed facts establish that plaintiffs' claim for equitable wrongful foreclosure fails as a matter of law, and summary judgment in favor of defendant is proper on this claim.

B. Fraud

Plaintiffs allege the following fraudulent misrepresentations by defendant in their complaint: (1) that if plaintiffs successfully made the trial payments for a three-month period, they would be entered into a permanent loan modification program with the same monthly payments; (2) that their trial payments were being applied to their loan balance and account; (3) that plaintiffs qualified for both the HAMP and in-house modification programs; and (4) that plaintiffs should stop making their full payments on the Note in order to receive a modification.

Defendant argues that plaintiffs' claims for fraudulent misrepresentation and negligence are barred by the economic loss doctrine, and that plaintiffs' fraud claims also fail because (1) the claims are barred by the express language of the Deed of Trust and the Missouri Statute of Frauds; (2) the claims are premised on predictions of future actions or expectation; and (3) plaintiffs cannot show reasonable reliance on any representations. Plaintiffs oppose summary judgment arguing that they are not seeking purely economic damages and therefore their claims are not barred by the economic loss doctrine, and that material issues of fact exist as to whether their claim is barred by language of the Deed of Trust or the Statute of Frauds, and as to whether they can prove all elements of their cause of action for fraud.

The elements of an action for fraudulent misrepresentation under Missouri law are: "1) a representation; 2) its falsity; 3) its materiality; 4) the speaker's knowledge of its falsity or ignorance of its truth; 5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; 6) the hearer's ignorance of the falsity of the representation; 7) the hearer's reliance on the representation being true; 8) the hearer's right to rely thereon; and, 9) the hearer's consequent and proximately caused injury." Renaissance Leasing, LLC v. Vermeer Mfg. Corp., 322 S.W.3d 112, 131-32 (Mo. 2010) (en banc). "When fraud is alleged the burden of proof as to each element

16

falls on the party asserting the fraud and fraud is never presumed." Magna Bank of Madison County v. W.P. Foods, Inc., 926 S.W.2d 157, 162 (Mo. Ct. App. 1996).  The failure to establish any one of the elements is fatal to a fraud claim.  Dolan v. Rabenburg, 231 S.W.2d 150, 154 (Mo. 1950).

The Court finds that defendant is entitled to summary judgment on plaintiffs' fraudulent misrepresentation claim for several reasons.  First, the claim is barred by express language of the Deed of Trust and by the Missouri Statute of Frauds, Mo. Rev. Stat. § 432.045.2 (2000).  The Deed of Trust specifically provides that "oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable."  Def.'s Ex. B at 16-17.  The Deed of Trust also specifies that "to protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it."  Id.  Section 432.045.2 expressly states that a debtor may not maintain an action upon or a defense to a credit agreement unless the credit agreement is in writing, provides for the payment of interest or other consideration, and sets forth the relevant terms and conditions.  Mo. Rev. Stat. § 432.045.2.

Plaintiffs argue the Deed of Trust and Statute of Frauds do not bar their claim because defendant's alleged "misstatements" were not limited to representations about modifying the loan, but also included that they were not in default, no foreclosure was pending, they were not at risk for foreclosure, they should not make their monthly payments, and they should not reinstate their loan. Plaintiffs' argument fails to recognize that all of the alleged "misstatements" were oral statements. Plaintiffs also admit that other than the Special Forbearance Agreement, which they signed but did not comply with, there was never a modification of the loan in the form of a written agreement signed by both defendant and plaintiffs.  As a result, under the express terms of the Deed of Trust

17

and § 432.045.2, plaintiffs cannot rely on any oral statements purportedly made by defendant to assert a claim for fraud.

Plaintiffs' claim for fraud also fails because it is based on representations concerning predictions of future actions or expectations, and the undisputed evidence shows plaintiffs cannot establish the element of reasonable reliance.  Statements and representations as to expectations and predictions of future actions or expectations cannot support a fraud claim.  Arnold v. Erkmann, 934 S.W.2d 621, 626 (Mo. Ct. App. 1996); Freitas v. Wells Fargo Home Mortg., Inc., 2011 WL 5524913, at *4 (W.D. Mo. Nov. 14, 2011).  Therefore, any statements allegedly made by defendant expressing future intent or a prediction of future circumstances are insufficient to support a fraud claim.

Plaintiffs claim the alleged statements by defendant that they should not make contractually required payments on their loan and that they were not at risk of foreclosure were not promises of "future actions or expectations."  However, these alleged statements were all claimed to be made while plaintiffs were under review for a loan modification and therefore relate to expectations and predictions concerning a future event – the loan modification.  As such, the alleged statements are insufficient to support recovery for fraudulent misrepresentation.

In addition, the undisputed evidence demonstrates plaintiffs cannot establish reasonable reliance, which is an essential element of a fraud claim.  Trimble v. Pracna, 167 S.W.3d 706, 712 (Mo. 2005) (en banc).  To establish reasonable reliance, a plaintiff must have been justified under the circumstances of the case in relying on the alleged misrepresentation that is the basis of the claim for fraud.  Id.; Hanson v. Acceptance Finance Co., 270 S.W.2d 143, 149 (Mo. Ct. App. 1954) (borrowers could not reasonably rely on oral statement that interest rate on loan was 8% where loan documents stated interest would be calculated at the highest rate permissible under law).

18

Here, the Deed of Trust expressly requires all modifications of the Note and Deed of Trust to be in writing. Plaintiffs agreed that after the term of the Special Forbearance Agreement, they would either bring their loan current or sign an agreement to bring the loan current. Plaintiffs admit they received several notices of default that advised them of the amount due and that failure to pay the amount due would result in acceleration. Plaintiffs admit they did not pay the amounts owed and, in fact, between March 20, 2010 and the date of foreclosure in September 2010, did not make any payments on the Note. Moreover, plaintiffs admit they received notice of the September 27, 2010 foreclosure sale but did not follow up with Kozeny & McCubbin, L.C. Mr. Pace testified that he understood the foreclosure sale would go forward on September 27, 2010.

Plaintiffs contend that even though they repeatedly received documents notifying them of their default and that they did not qualify for a modification, they were justified in relying on admittedly conflicting oral statements allegedly made by the defendant. The fact that plaintiffs affirmatively rely on their receipt of conflicting information demonstrates why plaintiffs cannot prove they reasonably relied on any oral representation allegedly made by defendant. In Freitas, the plaintiffs sued their loan servicer for fraudulent misrepresentation after a foreclosure. Freitas, 2011 WL 5524913, at *1. The plaintiffs' claim was based on conflicting misstatements allegedly made by various representatives of the loan servicer. Id. at *3. The plaintiffs alleged that although some representatives informed them that they would qualify for a loan modification and their mortgage would be modified, other representatives told them they would not qualify. Id. The plaintiffs claimed they stopped making their mortgage payments in anticipation of the modification, and the loan servicer subsequently foreclosed. Id. The loan servicer filed a motion to dismiss the complaint which was granted. The court found that even if the alleged statements could constitute fraudulent misrepresentation, the plaintiffs could not establish that they reasonably relied on conflicting

representations made by the loan servicer.  Id.  The district court reasoned that plaintiffs could not

pick and choose which alleged representations to accept and which to ignore, stating:  "It is not a

matter of picking and choosing what you want to hear and Plaintiffs were certainly not justified in

stopping their payments completely as that was never a possible option under any circumstance."

Id.

Plaintiffs in this case also allege that defendant's representatives made inconsistent and

conflicting statements, so they cannot choose to rely only on those alleged representations that were

favorable to them and ignore those that were not.

Also instructive is Cox, in which the Eighth Circuit held that plaintiffs' fraudulent

misrepresentation claim  failed for lack of reliance where the plaintiff homeowners alleged that Mr.

Martin, an employee of the lender, told them to stop making loan payments in late December 2008

after they had made three trial payments under a potential HAMP loan modification, and to expect

to receive notification of the modification approval shortly.  Cox, 685 F.3d at 667.[4]  However, the

modification was denied by the lender in February 2009, and the denial letter sent to the

homeowners informed them that if they did not bring their loan current immediately, foreclosure

could occur.  The letter also told the homeowners they could be eligible for other alternatives to

foreclosure.  In March 2009, the lender told the homeowners the loan had been placed in a "thirty-

day review period," that they should continue to make monthly payments under the trial plan, they

would continue to be eligible for HAMP consideration, and they would receive an additional written

communication of the status of the modification at the end of the thirty-day review period.

---

[4]The fraudulent misrepresentation claims at issue in Cox were brought under Minnesota law.
The Eighth Circuit's discussion in Cox is instructive because the elements of fraudulent
misrepresentation under Minnesota law are similar to Missouri law, see Cox, 685 F.3d at 672-73,
and the facts of Cox bear some similarity to the instant case.

20

Nonetheless, before the thirty-day period ended, the lender served the homeowners with a notice of foreclosure sale which stated that they needed to pay $31,846.30 to bring their "mortgage up to date."  The lender foreclosed on the property in October 2009.  Id.

The Eighth Circuit stated that although the homeowners claimed Mr. Martin's instructions caused them to discontinue payment and await word of modification approval, they did not allege that "awaiting word" caused them to be unable to pay the mortgage delinquency, and it was uncontroverted that the lender's February 2009 letter stated that the lender could not offer them a modification and instructed them to bring their loan current to avoid foreclosure.  Id. at 673-74.  The Eighth Circuit found the homeowners' factual allegations did not support a reasonable inference that their reliance on Mr. Martin's statements caused the modification denial and subsequent foreclosure. Id. at 674.  Similarly, the homeowners' allegation that they relied on the March 2009 letter promising a thirty-day review period by "believing they were in a review period" did not provide a plausible connection between their belief and the modification denial and resulting foreclosure. Id.  Finally, the homeowners failed to state a viable misrepresentation claim based on the allegation that they had made three trial payments in reliance on the promise of permanent modification, where they admitted they were merely informed that they "potentially qualified for a modification" before being asked to make the trial payments, not that payment would ensure a permanent modification. Id.

In this case, even if the statements allegedly made by defendant could constitute fraudulent misrepresentations, plaintiffs chose to rely on conflicting oral representations about the status of their loan and loan modification application, and ignored the unequivocal written communications that their loan was in default, modification had been denied, and foreclosure scheduled.  Therefore, under Freitas and Cox, plaintiffs cannot demonstrate that they reasonably relied on any oral

21

representations made by defendant, and cannot establish they were justified in stopping their payments completely from March 20, 2010 to the date of foreclosure.

Finally, Rule 9(b) of the Federal Rules of Civil Procedure provides, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Rule 9(b)'s "particularity requirement demands a higher degree of notice than that required for other claims." United States ex rel. Costner v. URS Consultants, Inc., 317 F.3d 883, 888 (8th Cir. 2003) (cited case omitted). "To satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." United States ex rel. Raynor v. National Rural Utilities Coop. Fin. Corp., __ F.3d __, 2012 WL 3600303, at *1 (8th Cir. Aug. 23, 2012) (quoted case omitted). "In other words, the party must typically identify the 'who, what, where, when, and how' of the alleged fraud." BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007) (internal quotation marks and quoted cases omitted).

Plaintiffs have never come forward with the "who, what, when, where and how" of their fraud claims – plaintiffs do not allege in the complaint, in their statement of uncontroverted material facts, or in Mr. Pace's affidavit, the time, place and contents of the alleged false representations, the identities of the individuals who made the representations, and what was obtained thereby. See Cox, 685 F.3d at 673. As a result, plaintiffs fail to meet the heightened pleading requirements of Rule 9(b) applicable to this claim, and on summary judgment fail to raise a genuine issue of material fact for trial.

For these reasons, defendant has established that it is entitled to summary judgment on plaintiffs' fraud claims. The Court therefore does not reach defendant's argument concerning the economic loss doctrine.

C. Negligence

Plaintiffs allege in their complaint that defendant was negligent in the following respects: (1) failing to apply plaintiffs' payments to their loan account and balance; (2) failing to inform plaintiffs that the trial payments would not represent the full amount of payment owed by them and could result in a delinquent account balance if plaintiffs did not qualify for a loan modification; (3) failing to maintain proper and accurate records of plaintiffs' payment history and account balance; (4) failing to provide plaintiffs with accurate information regarding the payoff balance and/or reinstatement amount for their loan; and (5) providing plaintiffs with inaccurate information regarding the payoff balance and/or reinstatement amount of their loan.

Defendant argues that it is entitled to summary judgment on plaintiffs' negligence claims because it owed no duty to the plaintiffs, an essential element of a negligence cause of action, as a lender in Missouri owes no duty to a borrower and the relationship is one of contractual obligation. Defendant asserts that plaintiffs are merely asserting a claim in tort stemming from the alleged breach of the Deed of Trust, which expressly provides for the manner in which loan payments are applied and provides, "*Lender may accept* any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payments in the future, *but lender is not obligated to apply such payments* at the time such payments are accepted." Def.'s Ex. B, ¶ 1 (emphasis added). The Deed of Trust further provides, "Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current." Id.

Defendant asserts that plaintiffs' allegations with respect to payoff figures are similarly couched in the contractual obligations under the Note and Deed of Trust.  Defendant contends that plaintiffs' claims are not that it failed to perform the duties under the contract with due care and skill, but instead are instead premised on the contention that it failed to complete the tasks required by the contract at issue, and therefore it cannot assert a negligence claim, citing Preferred Physicians Mutual Management Group v. Preferred Physicians Mutual Risk Retention, 918 S.W.2d 805, 814 (Mo. Ct. App. 1996) ("[A] mere failure to complete the undertaking required by contract would not give rise to a cause of action in tort; the remedy for such failure to act would lie in contract.  The courts in Missouri have never recognized a mere breach of contract as providing a basis for tort liability.").

Plaintiffs respond that they allege defendant failed to exercise due care in the performance of its contract undertakings because it failed to provide accurate information, or provided inaccurate information.  Thus, plaintiffs contend they are free to elect whether to pursue their claims in tort or in contract.  Further, while plaintiffs admit that a lender does not owe a duty to its borrowers, they assert that defendant was also acting as a loan servicer, and that some cases have held loan servicers owe a duty to disclose accurate information.  Plaintiffs cite Escobar v. Wells Fargo Bank, N.A., 2011 WL 6794032, at *3 (D. Ariz. Nov. 9, 2011) (denying motion to dismiss where plaintiffs alleged that defendant failed to disclose the amount of monthly payments; applying Arizona law),[5] and Susilo v. Wells Fargo Bank, N.A., 796 F.Supp.2d 1177, 1187 (C.D. Cal. 2011) (denying motion to dismiss negligence claim where defendant owed plaintiff a duty to disclose the reinstatement amount for her

---

[5]The district court in Escobar stated that the possible duty existing between a lender and borrower "is very narrow and limited only to the duty to disclose."  Escobar, 2011 WL 6794032, at *3.

loan, based on § 2924 of the California Civil Code and the deed of trust).  Specifically, plaintiffs assert that defendant as loan servicer owed them a duty to accurately disclose the reinstatement and payoff figures.

Under Missouri law, a plaintiff must prove the following elements to establish a negligence cause of action:  (1) the defendant had a duty to protect the plaintiff from injury; (2) the defendant breached that duty; and (3) the breach was the proximate cause of the plaintiff's injury.  Whipple v. Allen, 324 S.W.3d 447, 451 (Mo. Ct. App. 2010) (citation omitted).  "[A] mere breach of contract does not provide a basis for tort liability[.]"  Business Men's Assur. Co. of Am. v. Graham, 891 S.W.2d 438, 453 (Mo. Ct. App. 1994) (citing American Mortg. Inv. Co. v. Hardin-Stockton, 671 S.W.2d 283, 293 (Mo. Ct. App. 1984)).  Nevertheless, "the negligent act or omission which breaches the contract may serve as the basis for an action in tort."  Id.; see also Preferred Phys. Mut. Mgmt. Group, 918 S.W.2d at 813 ("Missouri law recognizes that a tort may be committed in the nonobservance of contract duties and that a negligent failure to perform a contractual undertaking may result in tort liability.").

> If the duty arises solely from the contract, the action is contractual.  The action may be in tort, however, if the party sues for breach of a duty recognized by the law as arising from the relationship or status the parties have created by their agreement.

Graham, 891 S.W.2d at 453.  For example, in Hardin-Stockton, 671 S.W.2d at 290, the Missouri Court of Appeals stated that the failure of a real estate broker to perform his contractual and fiduciary duties would support an action either for breach of contract or for negligence.

Under Missouri law, however, the relationship between a lender and a borrower is one of contractual obligation, not of duty.  Wood & Huston Bank v. Malan, 815 S.W.2d 454, 458 (Mo. Ct. App. 1991) (stating that "the relationship between a bank and its depositor involves a contractual

relationship between a debtor and a creditor;" citing Matter of Estate of Parker, 536 S.W.2d 25, 29 (Mo. 1976) (en banc)).  Here, both parties acknowledge that the relationship between a lender and a borrower is one of contractual obligation and not one of duty.  Accordingly, the Court finds that plaintiffs fail to allege sufficiently the first element of a negligence claim, the existence of a duty, with respect to defendant in its role as lender, and summary judgment should be granted on this claim.

Plaintiffs also assert that defendant owed them a duty to exercise care in performing its contractual obligations as a loan servicer and failed to discharge that duty by not providing accurate information or by providing inaccurate information regarding the reinstatement and payoff amounts. Plaintiffs do not cite any case law or other legal authority, however, holding or suggesting that the relationship between a loan servicer and borrower is one of duty under Missouri law.  As jurisdiction of this case is based on diversity of citizenship, the Court applies the substantive law of the forum state in which it sits.  Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938).  It is the federal courts' function to "interpret and apply, rather than to formulate and establish, state law."  Schiernbeck v. Davis, 143 F.3d 434, 441 (8th Cir. 1998).  In a diversity case, it may be both imprudent and improper for a federal court to expand substantive liability under state law.  Trimble v. Asarco, Inc., 232 F.3d 946, 963 (8th Cir. 2000), abrogated on other grounds by Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546 (2005).

Missouri courts have recognized the general proposition that "[w]hen a person possesses knowledge or skill superior to that of an ordinary person, the law requires of that person conduct consistent with such knowledge or skill."  Graham, 891 S.W.2d at 453 (quoted source omitted). Assuming, without deciding, that Missouri courts would recognize a duty of care on the part of a loan servicer to a borrower, the negligence claim here fails because plaintiffs do not offer factual

26

support for their allegations that defendant failed to provide accurate information or provided inaccurate information concerning the reinstatement and payoff amounts.

Assuming defendant had a duty to disclose information, the uncontested evidence establishes that defendant fulfilled that duty by sending plaintiffs three Notices of Default, each stating that plaintiffs' loan was in default, providing the then-current amount of plaintiffs' delinquency, and advising plaintiffs that the delinquency must be paid in certified funds to avoid acceleration of the debt.  Defendant repeatedly disclosed the amount necessary to reinstate the loan and plaintiffs admit they received the notices.  Plaintiffs have presented no evidence from which it can be reasonably inferred that defendant failed or refused to disclose information or disclosed inaccurate information.  Therefore, plaintiffs fail to offer evidence to support the second element of a negligence claim, that defendant breached any duty it may have owed to them, and defendant is entitled to summary judgment on this claim.

**V.  Conclusion**

For the foregoing reasons, defendant Wells Fargo Bank, N.A.'s motion for summary judgment should be granted in all respects.  Defendant's unopposed motions to exclude the testimony of plaintiffs' expert witnesses Steven A. Scallorn and Alan Edmond will be denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's Motion for Summary Judgment is **GRANTED**.  [Doc. 48]

**IT IS FURTHER ORDERED** that defendant's motions to exclude the testimony of plaintiffs' expert witnesses are **DENIED as moot**.  [Docs. 52, 54]

An appropriate judgment will accompany this Memorandum and Order.


**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**


Dated this  27th  day of August, 2012.